<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MICHELLE THOMPSON on behalf of her son, Najai Saunders, and NAJAI SAUNDERS, <br><br> *Plaintiffs,* <br><br> v. <br><br> CHERRY HILL TOWNSHIP, STATE OF NEW JERSEY, <br><br> *Defendants.* | HONORABLE KAREN M. WILLIAMS <br><br> No. 25-822 (KMW-EAP) <br><br> **MEMORANDUM OPINION** |

**WILLIAMS, District Judge.**

**THIS MATTER** comes before the Court by way of Defendants Cherry Hill Township's ("Cherry Hill") Motion to Dismiss (Dkt. No. 29) Plaintiffs Najai Saunders ("Saunders") and Michelle Thompson's ("Thompson," collectively, "Plaintiffs") Amended Complaint ("AC") (Dkt. No. 28) and Defendant State of New Jersey's ("New Jersey," with Cherry Hill, "Defendants") Motion to Dismiss the AC (Dkt. No. 42). Plaintiffs oppose dismissal and request leave to file a Second AC (Dkt. Nos. 37, 44, 46).

The Court decides the motions without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1. For the reasons below, both motions are **GRANTED**.

### I.    BACKGROUND

The following facts are drawn from Plaintiffs' AC (Dkt. No. 28) and are accepted as true solely for purposes of resolving the pending motions to dismiss. This action arises from juvenile delinquency proceedings commenced against Saunders in the Superior Court of New Jersey

following an incident that occurred in January 2020 while Saunders was a student at Beck Middle School in Cherry Hill, New Jersey. (*Id.* at 3.)

According to the AC, Saunders, then twelve years old, was accused of aggravated assault after another student fell during what Saunders characterizes as horseplay among several children at school. (*Id.*) Saunders alleges that he did not intentionally injure the other student and maintains that the incident was merely children "goofing around" rather than an assault. (*Id.*) Plaintiffs further allege that the injured student's parents filed a police report with the Cherry Hill Police Department after the incident and falsely represented the extent of the child's injuries. (*Id.*) Plaintiffs contend that medical records generated after the incident demonstrated that the child suffered no significant physical injury and instead reflected unrelated medical conditions. (*Id.*) Plaintiffs maintain that these records undermined the factual basis for the criminal charge ultimately brought against Saunders. (*Id.*)

The AC further alleges that Cherry Hill Detective Spell investigated the incident and prepared the police reports that served as the basis for the ensuing juvenile delinquency complaint. (*Id.*) Plaintiffs contend Detective Spell improperly relied upon inaccurate or incomplete information, drew unsupported conclusions regarding Saunders' intent, mischaracterized Saunders's statements during the investigation, and prepared a police report containing factual inaccuracies that were later relied upon by prosecutors. (*Id.*)

Plaintiffs also challenge the conduct of the prosecution that followed. They allege that the Camden County Prosecutor's Office ("CCPO"), through Assistant Prosecutor Mathew Callahan and other prosecutors involved in the juvenile proceedings, pursued charges despite an alleged lack of probable cause, relied upon Detective Spell's allegedly inaccurate investigative reports, and otherwise deprived Saunders of a fair adjudication. Plaintiffs additionally assert that Saunders

2

received ineffective assistance from his court-appointed counsel throughout the juvenile proceedings. (*Id.* at 3, 5.)

According to the AC, Saunders ultimately entered a guilty plea to an aggravated assault offense during the juvenile proceedings. (*Id.* at 4.) Plaintiffs allege that Saunders accepted the plea only after prolonged litigation and under circumstances they characterize as coercive because, in their view, he had no realistic alternative given the actions of the prosecutor, defense counsel, and presiding judge. (*Id.*) Plaintiffs further allege that Saunders later sought to withdraw his guilty plea, but that request was denied. (*Id.* at 20, Ex. C.) Plaintiffs maintain that the plea proceedings and subsequent denial of the withdrawal motion violated Saunders's rights under the Sixth and Fourteenth Amendments to the United States Constitution. (*Id.* at 5.)

Based on these allegations, Plaintiffs contend that Detective Spell, Cherry Hill, and New Jersey violated Saunders' constitutional rights by initiating and pursuing juvenile delinquency proceedings without sufficient factual support, withholding exculpatory evidence, relying upon false or misleading information, and depriving Saunders of due process and a fair adjudication. Plaintiffs seek monetary damages under 42 U.S.C. § 1983. (*Id.* at 5-19.)

## II.    PROCEDURAL HISTORY

Thompson, Saunders' mother, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983. (*See* Dkt. No. 1.) Thereafter, Saunders submitted the AC identifying both himself and Thompson as Plaintiffs. (Dkt. No. 28.) In the AC, Saunders explains that Thompson had previously pursued the action on his behalf and that he sought to join the litigation because he was the individual directly affected by the underlying juvenile proceedings. (*See generally id.*) Plaintiffs seek $250,000 in damages from Cherry Hill and an additional $250,000 from the State of New Jersey. (*Id.* at 2.)

3

On January 9, 2026, Cherry Hill moved to dismiss the AC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 29.) New Jersey subsequently filed its own motion to dismiss. (Dkt. No. 42.) Plaintiffs opposed both motions. (Dkt. Nos. 37, 44, 46.)

While the motions to dismiss remained pending, Plaintiffs filed a letter requesting leave to submit what they described as a "preliminary amended complaint" in lieu of the operative pleading. (Dkt. No. 44 at 5.) In that submission, Plaintiffs represented that the proposed amendment was intended primarily to clarify and supplement the allegations asserted in the existing AC rather than fundamentally alter the nature of the action. (*Id.* at 2.)

The motions to dismiss and Plaintiffs' request for further leave to amend are now ripe for disposition.

## III.    LEGAL STANDARD

### a.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the pleaded facts permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

Although courts must accept well-pleaded factual allegations as true, they need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In "[d]etermining whether a complaint states

4

a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because Plaintiffs proceed *pro se*, the Court construes their pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Nevertheless, *pro se* litigants must still allege sufficient facts to state a plausible claim for relief. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Liberal construction does not relieve a plaintiff of the obligation to comply with the Federal Rules of Civil Procedure or permit the Court to supply factual allegations that are absent from the complaint. *Id.* at 244–45.

### b. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has instructed that, in civil rights cases, a district court ordinarily should permit amendment before dismissing a complaint for failure to state a claim unless amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Amendment is futile where the amended complaint would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Thus, leave to amend may properly be denied where the deficiencies in a complaint arise from legal barriers that cannot be cured through additional factual allegations. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

5

## IV.    DISCUSSION

### a.  Thompson Lacks Standing to Assert Constitutional Claims on Saunders's Behalf.

As an initial matter, Thompson cannot pursue the constitutional claims asserted in the AC. Although Thompson is named as a co-plaintiff and alleges that she was "the more involved parent" throughout Saunders' juvenile proceedings, the AC makes clear that the alleged constitutional violations were directed at Saunders—not Thompson. (Dkt. No. 28 at 2; *see generally* Am. Compl.) Indeed, Saunders expressly states that Thompson previously filed this action "on my behalf" and that the present AC seeks relief for alleged violations of his rights arising from the underlying juvenile prosecution. (*Id.* at 2.)

Article III standing requires a plaintiff to demonstrate that she personally suffered an injury in fact fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Likewise, a claim brought under 42 U.S.C. § 1983 must be based upon the violation of plaintiff's personal rights, and not the rights of someone else. *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (holding that a § 1983 claimant "may only assert his own constitutional rights or immunities" and "cannot sue for the deprivation of another's civil rights."). Accordingly, a plaintiff generally may not recover under § 1983 for alleged violations of another person's constitutional rights.

Here, the AC alleges that Defendants violated Saunders' rights by initiating and prosecuting juvenile delinquency proceedings against him, withholding exculpatory evidence, coercing him into entering a guilty plea, denying him effective assistance of counsel, and depriving him of due process and a fair trial. (*See* Dkt. No. 28 at 5-19.) Those allegations concern injuries allegedly suffered by Saunders alone. Although Thompson asserts that she advocated for her son throughout the juvenile proceedings and was personally affected by the outcome, the AC does not plausibly

6

allege that Defendants violated any constitutional right belonging to Thompson herself. The fact that a parent experiences distress or frustration arising from alleged constitutional violations committed against her child does not confer standing to pursue the child's § 1983 claims. *See O'Malley*, 477 F.2d at 789.

Nor may Thompson prosecute Saunders' claims on his behalf. It is well settled that, although 28 U.S.C. § 1654 permits individuals to appear *pro se* on their own behalf, a non-attorney may not represent another person in federal court, including his or her own child. *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882–83 (3d Cir. 1991); *see also Harris-Thomas v. Christina Sch. Dist.*, 145 F. App'x 714, 715 (3d Cir. 2005). This rule protects both the represented party and the integrity of the judicial process by ensuring that legal claims are litigated by persons authorized to practice law.

The Court previously advised Thompson of this limitation and afforded her multiple opportunities to obtain counsel for Saunders before ultimately permitting Saunders to appear on his own behalf after reaching the age of majority. Despite those efforts, Thompson again appears as a co-plaintiff in the operative pleading and continues to assert claims predicated on alleged violations of Saunders' constitutional rights. Because Thompson lacks standing to assert those claims and has not plausibly alleged the violation of any constitutional right personal to her, all claims asserted by Thompson must be dismissed with prejudice.

This ruling, however, does not affect Saunders' ability to pursue claims based upon alleged violations of his own constitutional rights. The Court therefore proceeds to consider whether Saunders has stated a viable claim for relief under § 1983.

### b. Saunders' § 1983 Claims Are Barred by *Heck v. Humphrey.*

Even assuming Saunders has standing to pursue his own claims, the Court concludes that his § 1983 claims are barred by the favorable-termination rule established in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that a plaintiff may not recover damages under § 1983 for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first demonstrates that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus.*" *Id.* at 486–87. Thus, when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," a § 1983 action is not cognizable unless the underlying conviction has already been invalidated. *Id.* at 487. The Third Circuit has consistently applied *Heck* to bar civil rights actions that would necessarily undermine the validity of an outstanding criminal judgment. *See, e.g., Gilles v. Davis*, 427 F.3d 197, 209–10 (3d Cir. 2005); *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006).

Although *Heck* involved an adult criminal conviction, its reasoning applies with equal force where, as here, a plaintiff seeks damages arising from a juvenile delinquency adjudication whose validity has not been set aside. The relevant inquiry is not the label attached to the underlying proceeding, but whether success on the plaintiff's civil claims would necessarily imply the invalidity of an extant adjudication supporting the plaintiff's custody or criminal liability. *See Heck*, 512 U.S. at 486–87.

Here, that is precisely what Saunders asks this Court to do. The AC repeatedly alleges that the juvenile proceedings were constitutionally infirm because Detective Spell allegedly fabricated

8

or misrepresented evidence, ignored exculpatory information, lacked probable cause to pursue the investigation, and prepared inaccurate investigative reports that prosecutors relied upon in charging Saunders. (*See* Dkt. No. 28 at 5-19.) Plaintiffs further allege that prosecutors knowingly pursued charges unsupported by the evidence, failed to disclose exculpatory material, and deprived Saunders of due process. (*Id.*) Finally, Saunders alleges that his guilty plea was coerced, that he received ineffective assistance of counsel throughout the juvenile proceedings, and that the state court improperly denied his subsequent attempt to withdraw that plea. (*Id.*) These allegations form the foundation of every constitutional claim asserted in the AC

Success on those claims would necessarily require this Court to conclude that Saunders' juvenile adjudication was obtained in violation of the Constitution and therefore is invalid. A finding that Detective Spell fabricated evidence material to the prosecution, that prosecutors withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that Saunders' guilty plea was unconstitutionally coerced, or that he was denied the effective assistance of counsel would directly undermine the validity of the adjudication from which Plaintiffs' alleged injuries arise. Those are precisely the types of claims that *Heck* forbids absent a prior favorable termination. *See Heck*, 512 U.S. at 486–87; *Gilles*, 427 F.3d at 209–10.

Critically, the AC does not allege that Saunders' juvenile adjudication or resulting guilty plea has ever been reversed on appeal, vacated, expunged, declared invalid by a state court, or otherwise called into question through federal habeas proceedings. To the contrary, Plaintiffs acknowledge that Saunders sought to withdraw his guilty plea and that the state court denied that request. Thus, the operative pleading confirms that the adjudication underlying Plaintiffs' claims remains intact.

Plaintiffs cannot avoid *Heck* by characterizing their claims as violations of the Fourth, Sixth, or Fourteenth Amendments rather than as a direct challenge to the validity of the juvenile proceedings. Courts look to the substance of the claims, not the constitutional labels attached to them. Here, each theory of liability ultimately depends upon the proposition that Saunders should never have been investigated, charged, prosecuted, or adjudicated delinquent. Because a judgment awarding damages on those theories would necessarily imply that the underlying adjudication is invalid, the claims are barred unless and until that adjudication is set aside through appropriate state or federal proceedings. *See Heck*, 512 U.S. at 487.

Accordingly, Saunders' claims for damages under § 1983 are not cognizable at this time and must be dismissed.

### c. Even If *Heck* Did Not Apply, the Amended Complaint Otherwise Fails to State a Claim.

Even assuming *Heck* did not bar Saunders' claims, the Amended Complaint independently fails to state a plausible claim for relief under 42 U.S.C. § 1983.

#### i. *Plaintiffs Fail to State a Claim Against the State of New Jersey.*

New Jersey argues that the claims against it are barred because the State is immune from suit under the Eleventh Amendment and is not a "person" subject to liability under § 1983. The Court agrees.

The Eleventh Amendment generally deprives federal courts of jurisdiction over suits brought by private parties against a nonconsenting state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984). Absent waiver or a valid congressional abrogation of immunity, states and their agencies are immune from suits seeking monetary damages in federal court. *Id.*; *MCI Telecomm. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503–04 (3d Cir. 2001). Congress did not abrogate the States' Eleventh Amendment immunity when it enacted § 1983, *Quern v.*

*Jordan*, 440 U.S. 332, 341–45 (1979), and New Jersey has not consented to § 1983 suits for damages in federal court. *See MCI Telecomm.*, 271 F.3d at 503–04.

Moreover, even apart from sovereign immunity, the State is not a proper defendant under § 1983. The statute imposes liability only upon a "person" who, acting under color of state law, deprives another of a federally protected right. 42 U.S.C. § 1983. A State is not a "person" within the meaning of the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989).

Here, Plaintiffs seek monetary damages directly from New Jersey for its alleged role in Saunders' juvenile prosecution. Because New Jersey is immune from such claims and is not a "person" amenable to suit under § 1983, the claims against the State fail as a matter of law.

### ii.  *Plaintiffs Fail to State a Plausible Monell Claim Against Cherry Hill.*

Plaintiffs likewise fail to state a claim against Cherry Hill Township. A municipality may not be held liable under § 1983 solely because it employs an alleged tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978). Municipal liability exists only where the execution of an official policy or an established custom causes a constitutional deprivation. *Id.* at 694. To state a plausible *Monell* claim, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and plead facts demonstrating a direct causal relationship between that policy or custom and the alleged constitutional injury. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009); *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019).

The AC does not satisfy these pleading requirements. Although Plaintiffs repeatedly assert that Cherry Hill is responsible for Detective Spell's alleged misconduct, they identify no municipal policy, custom, or practice that caused the alleged constitutional violations. (*See generally* Dkt. No. 28.) Nor do they plead facts suggesting a pattern of similar conduct, a deliberately indifferent failure to train or supervise, or any decision by a municipal policymaker that allegedly resulted in

11

Saunders' injuries. Instead, the AC relies almost entirely on allegations concerning the investigation of Saunders' individual case. (*See* Dkt. No. 28 at 5-19.)

Such allegations are insufficient to state a plausible claim for municipal liability. "A single incident by a lower level employee acting under color of law . . . does not suffice to establish either an official policy or a custom." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

Accordingly, Plaintiffs' *Monell* claim against Cherry Hill must be dismissed.

### iii. Plaintiffs' Remaining Constitutional Allegations Are Conclusory and Directed at Non-Defendants.

Finally, the remainder of the AC consists largely of conclusory assertions that various participants in Saunders' juvenile proceedings violated his constitutional rights. For example, Plaintiffs allege that Detective Spell fabricated evidence, prosecutors withheld exculpatory information, defense counsel rendered ineffective assistance, and the state court improperly accepted Saunders' guilty plea and later denied his motion to withdraw that plea. But many of these allegations are asserted in broad, conclusory terms, without sufficient factual enhancement to permit the Court to infer a plausible constitutional violation. *See Iqbal*, 556 U.S. at 678. Moreover, several of Plaintiffs' allegations concern individuals who are not defendants in this action, including Saunders' appointed defense counsel and the state-court judge who presided over the juvenile proceedings. The Court cannot impose liability under § 1983 upon persons who have not been named as defendants, nor may it hold Cherry Hill or New Jersey vicariously liable for the alleged constitutional violations of others. *See Monell*, 436 U.S. at 691.

Accordingly, even if Saunders' claims were not barred by *Heck*, the AC independently fails to plead facts sufficient to state a plausible claim for relief against either remaining defendant.

12

### d.  Leave to Amend Will Be Denied.

Finally, Plaintiffs request leave to file what they characterize as a "preliminary amended complaint" in lieu of the operative AC (Dkt. No. 44.) In that submission, Plaintiffs explain that the proposed amendment is intended principally to "clarify" and supplement the allegations already asserted rather than to fundamentally alter the nature of the action. (*Id.* at 2.) New Jersey opposes any further amendment, arguing that amendment would be futile because Plaintiffs' claims fail as a matter of law. (Dkt. No. 47.)

As discussed above, the principal deficiencies in Plaintiffs' action do not arise from an absence of factual detail but from legal defects that additional factual allegations cannot cure. Thompson lacks standing to assert constitutional claims belonging to Saunders, and, as a non-attorney, cannot prosecute those claims on his behalf. Saunders' claims for damages are *Heck*-barred, because success on those claims would necessarily imply the invalidity of his juvenile adjudication, which the AC does not allege has been reversed, vacated, or otherwise invalidated. Moreover, New Jersey is immune from suit under the Eleventh Amendment and is not a "person" subject to liability under 42 U.S.C. § 1983, while the Amended Complaint fails to plead facts sufficient to establish municipal liability against Cherry Hill under *Monell*. These are legal barriers that cannot be overcome through more artful pleading.

The record likewise demonstrates that Plaintiffs have already had an opportunity to amend. (*See* Dkt. No. 27.) After initiating this action, Plaintiffs filed the operative AC, which is now the subject of Defendants' motions to dismiss. (Dkt. No. 28.) Rather than identifying newly discovered facts or a materially different legal theory, Plaintiffs' subsequent request for leave to amend represents that the proposed pleading would primarily clarify and supplement the existing

13

allegations. (Dkt. No. 44.) Nothing in Plaintiffs' submission suggests that a second amended complaint would cure the dispositive legal deficiencies discussed above.

Under these circumstances, permitting further amendment would serve only to prolong litigation over claims that are not legally cognizable. Because the Court concludes that amendment would be futile, Plaintiffs' request for leave to amend will be denied, and the AC will be dismissed with prejudice.

## V.   CONCLUSION

For all the foregoing reasons, Defendants' Motions to Dismiss (Dkt. Nos. 29, 42) are **GRANTED**; Plaintiffs' AC (Dkt. No. 28) is **DISMISSED with prejudice**; and Plaintiffs' request for further leave to amend (Dkt. No. 44) is **DENIED**.

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE